No. 25-1569

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

JOHN DOE,

Plaintiff-Appellee,

v.

CATHOLIC RELIEF SERVICES,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
for the District of Maryland

————————————

**BRIEF FOR INTERVENOR THE UNITED STATES OF AMERICA**

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

KELLY O. HAYES
  *United States Attorney*

CHARLES W. SCARBOROUGH
LOWELL V. STURGILL JR.
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7531*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3427*

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................1

STATEMENT OF JURISDICTION .....................................................3

STATEMENT OF THE ISSUES ..........................................................3

STATEMENT OF THE CASE ..............................................................4

    A.    Factual Background ...........................................................4

    B.    Prior Proceedings ..............................................................5

SUMMARY OF ARGUMENT................................................................8

STANDARD OF REVIEW ..................................................................11

ARGUMENT .......................................................................................11

I.     RFRA Applies in Private Suits to Enforce Obligations
Created by Acts of Congress or Agency Regulations..............11

II.    The First Amendment's Church Autonomy Doctrine Bars
Doe's Title VII and Equal Pay Act Claims .............................20

III.   The District Court Failed to Adequately Address CRS's
Free Exercise Clause Claims....................................................31

CONCLUSION....................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bell v. Presbyterian Church (U.S.A.),*
126 F.3d 328 (4th Cir. 1997) ................................................................ 22, 28, 29

*Billard v. Charlotte Catholic High Sch.,*
101 F.4th 316 (4th Cir. 2024) ........................................................ 20

*Bostock v. Clayton County,*
590 U.S. 644 (2020) ........................................................................ 19

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000) ........................................................................ 26

*Bryce v. Episcopal Church in the Diocese of Colo.,*
289 F.3d 648 (10th Cir. 2002) .......................................................29

*Catholic Charities Bureau, Inc. v. Wisconsin Lab. &
Indus. Rev. Comm'n,*
605 U.S. 238 (2025) ................................................ 9, 24, 26, 27, 30

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................ 32, 33

*Corporation of the Presiding Bishop of the Church of Jesus
Christ of Latter-Day Saints v. Amos,*
483 U.S. 327 (1987) ........................................................................ 23

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,*
450 F.3d 130 (3d Cir. 2006) ........................................................ 25

*EEOC v. Catholic Univ. of Am.,*
83 F.3d 455 (D.C. Cir. 1996).........................................................15

*Employment Div. v. Smith,*
494 U.S. 872 (1990) ............................................................ 9, 13-14, 31

*Flagg Bros. v. Brooks,*
436 U.S. 149 (1978) ........................................................................ 18

*General Conf. Corp. of Seventh-Day Adventists v. McGill,*
617 F.3d 402 (6th Cir. 2010) ........................................................ 16

ii

*General Council on Fin. & Admin. of the United*
  *Methodist Church v. Superior Ct. of Cal.,*
  439 U.S. 1355 (1978) ...................................................................... 28-29

*Hankins v. Lyght,*
  441 F.3d 96 (2d Cir. 2006) ........................................ 15, 16, 17, 18, 19

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012) ................................ 10, 21, 22, 23, 24, 25, 30

*Kennedy v. Braidwood Mgmt., Inc.,*
  145 S. Ct. 2427 (2025) ........................................................ 14

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) ................................................................ 25

*Listecki v. Official Comm. of Unsecured Creditors,*
  780 F.3d 731 (7th Cir. 2015) ............................................ 16

*NLRB v. Catholic Bishop of Chi.,*
  440 U.S. 490 (1979) ........................................................ 24, 25

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
  591 U.S. 732 (2020) ............................................ 2, 9, 14, 21, 22, 27

*Perkins v. International Paper Co.,*
  936 F.3d 196 (4th Cir. 2019) ............................................ 11

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
  592 U.S. 14 (2020) ............................................................ 32, 33

*Rweyemamu v. Cote,*
  520 F.3d 198 (2d Cir. 2008) ............................................ 15

*Seattle's Union Gospel Mission v. Woods,*
  142 S. Ct. 1094 (2022) ................................................ 23, 24

*Serbian E. Orthodox Diocese v. Milivojevich,*
  426 U.S. 696 (1976) ............................................................ 28

*Sutton v. Providence St. Joseph Med. Ctr.,*
  192 F.3d 826 (9th Cir. 1999) ............................................ 18

*Tandon v. Newsom,*
593 U.S. 61 (2021) ............................................................... 2-3, 10, 32, 33

*United States v. Hamilton,*
699 F.3d 356 (4th Cir. 2012) .......................................................... 20

*Watson v. Jones,*
80 U.S. (13 Wall.) 679 (1872) ........................................................ 27

*Young, In re,*
82 F.3d 1407 (8th Cir. 1996) .......................................................... 15

**U.S. Constitution:**

Amend. I ................................................................................. 21, 31

**Statutes:**

Civil Rights Act of 1964:
    42 U.S.C. § 2000e(b) ............................................................. 7
    42 U.S.C. § 2000e-1(a) ...................................................... 6, 20
    42 U.S.C. § 2000e-2(a) ....................................................... 1, 5
    42 U.S.C. § 2000e-2(f) ........................................................... 7

Equal Pay Act:
    29 U.S.C. § 206(d)(1) ......................................................... 1, 5
    29 U.S.C. § 213(a)(3) ............................................................. 7
    29 U.S.C. § 213(a)(5) ............................................................. 7
    29 U.S.C. § 213(a)(8) ............................................................. 7
    29 U.S.C. § 213(a)(10) ........................................................... 7
    29 U.S.C. § 213(a)(18) ........................................................... 7
    29 U.S.C. § 213(a)(19) ........................................................... 7

Religious Freedom Restoration Act (RFRA):
    42 U.S.C. § 2000bb(a)(4) ...................................................... 14
    42 U.S.C. § 2000bb(b) ......................................................... 14
    42 U.S.C. § 2000bb(b)(2) ...................................................... 13
    42 U.S.C. § 2000bb-1 *et seq.* ................................................. 1

42 U.S.C. § 2000bb-1(b) ............................................................. 11, 17
42 U.S.C. § 2000bb-1(c) ............................................................. 6, 15, 16
42 U.S.C. § 2000bb-2(1) ............................................................. 8, 11, 12, 18
42 U.S.C. § 2000bb-2(3) ............................................................. 17
42 U.S.C. § 2000bb-3(a) ............................................................. 13, 15

28 U.S.C. § 1291 ......................................................................... 3

28 U.S.C. § 1331 ......................................................................... 3

28 U.S.C. § 1367 ......................................................................... 3

Maryland Fair Employment Practices Act,
    Md. Code Ann., State Gov't § 20-606 ............................................. 1

**Other Authorities:**

Michael W. McConnell, *The Origins and Historical
    Understanding of Free Exercise of Religion*,
    103 Harv. L. Rev. 1409 (1990)................................................30

Old N. Church, *Old North's Sexton: Then & Now*,
    https://perma.cc/F9NZ-KZUU ................................................30

Antonin Scalia & Bryan A. Garner, *Reading Law:
    The Interpretation of Legal Texts* (2012)................................16

## INTRODUCTION

The United States files this brief as intervenor to address certain federal-law issues in this appeal. The district court granted judgment for plaintiff John Doe, who was an employee of defendant Catholic Relief Services (CRS), on claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Equal Pay Act, 29 U.S.C. § 206(d)(1), holding that CRS violated those laws by denying spousal benefits to Doe's same-sex spouse. The court rejected a variety of statutory and constitutional religious-liberty defenses raised by CRS, and also granted judgment for Doe on his claim under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606.

The district court erred in rejecting various defenses raised by CRS that are grounded in the organization's sincere religious beliefs. First, the court erred by holding that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1 *et seq.*, does not apply in suits between private parties. RFRA's text, context, and purposes demonstrate that a religious employer may raise RFRA as a defense to any claim seeking to enforce obligations set out in a federal statute or regulation. If this Court were to agree, it should remand with instructions for the district court to determine in the first

instance whether granting Doe relief on his Title VII and RFRA claims would substantially burden CRS's exercise of religion and if so whether granting relief would be the least restrictive means to further a compelling government interest.

Principles of constitutional avoidance support remanding on CRS's RFRA defense without addressing CRS's constitutional defenses. If this Court were to reach these issues, however, it should hold that application of Title VII and the Equal Pay Act to CRS's actions here violates the church autonomy doctrine. That doctrine protects the right of churches and other religious institutions to decide matters of faith and doctrine. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). Declining to provide employment benefits to its employees' same-sex spouses is a matter of faith and doctrine for CRS, and holding CRS liable for such actions under Title VII and the Equal Pay Act violates its First Amendment church autonomy rights.

To the extent the Court reaches CRS's constitutional defenses, it should also remand to the district court with instructions to address CRS's Free Exercise Clause defense to Doe's Title VII and Equal Pay Act claims. The Free Exercise Clause requires strict scrutiny of government action that treats any comparable secular activity more favorably than religious activity. *See*

*Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). Title VII and the Equal Pay Act contain a variety of secular exemptions, and the district court failed to adequately address whether those secular exemptions are comparable to the religious exemption CRS requests. This Court should remand for the district court to conduct the proper analysis in the first instance.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Doe's federal Title VII and Equal Pay Act claims pursuant to 28 U.S.C. § 1331, and over Doe's state-law claims pursuant to 28 U.S.C. § 1367. The district court entered final judgment in Doe's favor on April 21, 2025. JA1137. CRS filed a timely notice of appeal on May 16, 2025. JA1138-1139. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by rejecting CRS's RFRA defense to Doe's Title VII and Equal Pay Act claims on the ground that RFRA does not apply in suits between private parties.

2. If the Court reaches the issue, whether the district court should have dismissed Doe's Title VII and Equal Pay Act claims under the First Amendment's church-autonomy doctrine.

3.     If the Court reaches the issue, whether the district court also erred by failing to conduct a proper comparability analysis to assess whether Title VII and the Equal Pay Act are neutral laws of general applicability under the Free Exercise Clause.

## STATEMENT OF THE CASE

### A.     Factual Background

Plaintiff John Doe is a gay male who is in a legally recognized same-sex marriage. *See* JA14. In mid-2016, Doe applied for a full-time position with CRS that involved providing business and technical support for users of a CRS information-management platform. *See* JA13. Prior to accepting the position, Doe asked his CRS recruiter whether his husband would be covered by CRS's spousal health insurance benefits. *See* JA14. The recruiter replied that "[a]ll dependents are covered," and Doe accepted the job. JA14 (quotation marks omitted). During Doe's onboarding session, CRS staff members confirmed that his husband would have insurance coverage with CRS. *See* JA15. Doe applied for health insurance for himself and his husband and both received coverage through October 1, 2017. *See* JA15.

On October 1, 2017, CRS terminated Doe's spousal health coverage. *See* JA18. CRS notified Doe that CRS had mistakenly provided spousal coverage

for his husband under CRS's health insurance plan, *see* JA15, explaining that "'[f]ollowing the Catholic Church's definition of marriage, we cannot offer benefits to unmarried domestic partners, nor to same-sex spouses,'" JA17. CRS offered to provide Doe's husband with another insurance option (a "COBRA-like insurance alternative") that did not violate CRS's religious beliefs and increase Doe's salary by $5,000 to cover most of the increased cost of the alternative, which CRS expected would cost $6,400. JA926-927. Doe found that offer unsatisfactory because he was forced to secure alternative coverage at rates higher than those afforded under CRS's plan and because his spouse had to delay dental work which resulted in an additional surgery that would have been unnecessary had he been covered by CRS's plan at the time. *See* JA18.

### B.    Prior Proceedings

1.    Doe filed a timely discrimination charge with the Equal Employment Opportunity Commission (EEOC) against CRS. *See* JA18. After 180 days passed, the EEOC issued Doe a right to sue letter and Doe filed the complaint in this action, asserting claims under Title VII, 42 U.S.C. § 2000e-2(a); the Equal Pay Act, 29 U.S.C. § 206(d)(1); and several state laws. *See* JA19-31.

The district court granted summary judgment in favor of Doe on his Title VII and Equal Pay Act claims. *See* JA924-946. CRS did not dispute that it revoked Doe's dependent health insurance because of his sex or that Doe has stated valid prima facie claims under Title VII and the Equal Pay Act. *See* JA930, JA938. Instead, CRS argued that Doe's Title VII and Equal Pay Act claims are barred by RFRA, the First Amendment's church autonomy doctrine, and the Free Exercise Clause. CRS also argued that Doe's Title VII claim is precluded by Title VII's religious organization exception, 42 U.S.C. § 2000e-1(a).

The court rejected each of CRS's statutory defenses. The court held that RFRA does not apply here because that statute's references to relief "against a government," 42 U.S.C. § 2000bb-1(c), require concluding that RFRA does not apply in suits between private parties. JA934. The court concluded that Title VII's religious organization exception, section 702(a), does not apply here because it "does not exempt religious organizations from the bar on forms of discrimination based on protected characteristics other than religion." JA932.

The court also rejected CRS's constitutional defenses. It declared the church autonomy doctrine inapplicable here on the ground that evaluating Doe's claims would not require inquiring into matters of Catholic faith and

doctrine. *See* JA929 (noting that "this case concerns a social service organization's employment benefit decisions regarding a data analyst and does not involve CRS's spiritual or ministerial functions"). And the court rejected CRS's Free Exercise Clause defense on the ground that Title VII is "neutral and generally applicable." JA934. The court found that Title VII's exceptions for businesses with 15 or fewer employees, Indian tribes, and employment actions taken against employees affiliated with Communist organizations, 42 U.S.C. §§ 2000e(b), 2000e-2(f), are not comparable "to the religious activity of a social services nonprofit with over 7000 employees." JA936. The court did not perform any analysis of the many secular exceptions in the Equal Pay Act, *see* 29 U.S.C. § 213(a)(3), (5), (8), (10), (18), (19), which apply to the Fair Labor Standards Act as a whole.

After holding a trial on Doe's state-law claim under the Maryland Fair Employment Practices Act (MFEPA), the court also granted judgment for Doe on that claim. *See* JA1127-1128. Having thus resolved all Doe's claims, the court entered final judgment awarding Doe compensatory damages of $60,000 on his MFEPA claim, *see* JA1137, pursuant to a stipulation in which the parties agreed to that amount for any and all claims for which CRS has been or may

be found liable, *see* JA1107. CRS timely appealed the judgment. *See* JA1138-1139.

## SUMMARY OF ARGUMENT

The district court erred by rejecting various statutory and constitutional defenses raised by CRS that are grounded in that organization's sincere religious beliefs. Because the court's analysis of those defenses was either erroneous or incomplete, the Court should correct the court's errors and remand for the court to conduct the proper analysis in the first instance.

1.     The district court erred by holding that RFRA cannot apply in suits between private parties. RFRA precludes the government, including a "branch" of government, 42 U.S.C. § 2000bb-2(1), from substantially burdening the exercise of religion. A court, which is a branch of government, can substantially burden an employer's exercise of religion when the court enforces a federal statute against an employer in a suit brought by an employee. In addition, Congress, another branch of government, can substantially burden an employer's exercise of religion by enacting statutes that require an employer to take actions inconsistent with its sincere religious beliefs.

RFRA's purpose, and the circumstances that prompted its enactment, confirm that it applies, at a minimum, in private suits to enforce obligations created by Acts of Congress or agency regulations. Congress enacted RFRA to restore the substantial burden/compelling interest test the Supreme Court applied in Free Exercise Clause cases prior to *Employment Division v. Smith*, 494 U.S. 872 (1990), and it is well-established that employers can raise the Free Exercise Clause as a defense to a private-party action to enforce federal statutory rights. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). Nothing in RFRA suggests that Congress intended RFRA, which *expands* the protections for religious exercise that Congress believed *Smith* had unduly restricted, to provide *less* protection by applying to a narrower range of cases than the Free Exercise Clause itself.

2.     Under principles of constitutional avoidance, this Court could properly remand based on RFRA rather than reaching CRS's constitutional defenses. If this Court reaches these issues, however, it should hold that the First Amendment's church autonomy doctrine requires dismissing Doe's Title VII and Equal Pay Act claims. Religious organizations "need to hire and pay staff," *Catholic Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 259 (2025) (Thomas, J., concurring), and requiring a

religious institution to engage in employment practices such as those at issue here that violate its religious beliefs would violate both the Free Exercise Clause, which "protects a religious group's right to shape its own faith and mission through its appointments," *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012), and the Establishment Clause, which "prohibits government involvement in such ecclesiastical decisions," *id.* at 189.

3.      If the Court remands Doe's Title VII and Equal Pay Act claims under RFRA or on some other ground, it also should instruct the district court to reevaluate CRS's Free Exercise Clause defense. "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). Title VII and the Equal Pay Act both contain a variety of secular exceptions, and the district court failed to adequately assess whether those exceptions pose a greater risk to the government interests underlying those statutes than would CRS's requested religious exemption. To the extent this Court concludes that CRS does not have a complete defense to Doe's Title VII and Equal Pay Act claims on other grounds, it should

remand for the district court to perform a proper comparability analysis of the secular exemptions in those statutes under the Free Exercise Clause.

## STANDARD OF REVIEW

The district court's rulings with respect to CRS's RFRA, church autonomy, and Free Exercise Clause defenses all raise purely legal issues that this Court reviews de novo. *See, e.g., Perkins v. International Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).

## ARGUMENT

### I.     RFRA Applies in Private Suits to Enforce Obligations Created by Acts of Congress or Agency Regulations.

RFRA provides that "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). RFRA applies to the federal "government," *see id.* § 2000bb-2(1), and CRS has raised RFRA as a defense to Doe's federal Title VII and Equal Pay Act claims.

The district court held that RFRA does not apply to suits between private parties, and for that reason did not address how RFRA's substantive standards apply here. *See* JA932-934. As explained below, the court erred

because, at a minimum, RFRA applies in private suits to enforce obligations created by federal statutes or regulations. Accordingly, this Court should reverse the court's grant of summary judgment in favor of Doe on his Title VII and Equal Pay Act claims and remand for the district court to apply RFRA's substantial burden/compelling interest test.

A.     The term "government" in RFRA includes "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2(1). When a plaintiff sues an employer under a federal statute for actions motivated by the employer's religious beliefs, the "government" substantially burdens the employer's religious exercise in at least two ways. First, the Judiciary (a "branch" of the federal government) burdens the employer's religious exercise by applying those statutes to the employer. In addition, Congress (another "branch" of the federal government) burdens the employer's religious exercise through its statutes regulating the employer's conduct. Thus, the plain language of RFRA demonstrates that it applies in private suits to enforce federal statutory obligations.[1]

---

[1] The same reasoning applies when a plaintiff sues an employer under a federal regulation. Federal regulations are valid only where the agency has

*Continued on next page.*

Two other RFRA provisions confirm this reading of the statute. First, RFRA applies "to all [f]ederal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993," 42 U.S.C. § 2000bb-3(a), which was the date of RFRA's enactment. Title VII and the Equal Pay Act are included in "all [f]ederal law," and a private plaintiff's suit to enforce those statutes is an "implementation of that law." Second, 42 U.S.C. § 2000bb(b)(2) provides that one of RFRA's "purposes" is "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." *Id.* § 2000bb(b)(2). Applying RFRA to a suit by a private party against a religious employer to enforce the obligations of a federal statute helps fulfill that goal by providing the employer with a "defense" to liability.

RFRA's purpose, and the circumstances that prompted its enactment, confirms that the statute applies in a private action to enforce a federal statute or regulation. Congress enacted RFRA to restore, as a matter of statutory right, the compelling interest/least restrictive means test the Supreme Court applied to Free Exercise Clause cases prior to *Employment Division v.*

statutory authority, and a plaintiff can prevail in that kind of suit only pursuant to a ruling by the court in which the suit has been filed.

*Smith*, 494 U.S. 872 (1990). *See* 42 U.S.C. § 2000bb(a)(4), (b). An employer can assert the Free Exercise Clause as a defense to a suit brought by a private party to enforce an obligation created by federal laws, *see Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020), and RFRA is best construed to apply to the same types of cases rather than a far narrower subset of cases brought by the government. Indeed, nothing in RFRA suggests that Congress intended RFRA, which *expands* the protections for religious exercise that Congress believed *Smith* had unduly restricted, to provide *less* protection by applying to a narrower range of cases than the Free Exercise Clause itself.

Were this Court to conclude that RFRA does not apply to private party suits to enforce a federal statute, it would produce anomalous results. Under that restrictive view of RFRA, for example, an employer could raise a RFRA defense if the EEOC sues to enforce Title VII or the Equal Pay Act, but not where a private plaintiff brings an identical suit. This Court should not lightly presume that Congress intended such a counter-intuitive result. *See*, *e.g.*, *Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2459 (2025) (construing a statutorily authorized agency reorganization plan to avoid producing "untenable" results).

**B.** The courts of appeals are divided on whether RFRA applies in suits between private parties. This Court should join the Second Circuit in expressly holding that RFRA applies, at a minimum, to private party suits to enforce federal statutes.

In *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006), the Second Circuit held that RFRA provided a religious employer a defense to an age discrimination suit brought by one of its employees under the Age Discrimination in Employment Act. The Court relied principally on the fact that RFRA "applies to all [f]ederal law, and the implementation of that law," 42 U.S.C. § 2000bb-3(a), and that a defendant "may assert" RFRA "as a . . . defense in a judicial proceeding," *id.* § 2000bb-1(c). The D.C. Circuit and the Eighth Circuits have similarly applied RFRA to private-party suits without specifically addressing the issue. *See EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C. Cir. 1996); *In re Young*, 82 F.3d 1407 (8th Cir. 1996).[2]

Dissenting in *Hankins*, then-Judge Sotomayor argued that RFRA does not apply to suits between private parties. Two other circuits have since

---

[2] A different Second Circuit panel expressed unexplained "doubts" about the Court's holding in *Hankins*, but did not revisit the issue because the defendants waived a RFRA defense. *See Rweyemamu v. Cote*, 520 F.3d 198, 203-204 (2d Cir. 2008).

adopted Judge Sotomayor's reasoning. *See Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 736-737 (7th Cir. 2015); *General Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010). Those decisions are unpersuasive and this Court should reject them.

Judge Sotomayor relied primarily on 42 U.S.C. § 2000bb-1(c), which states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a *government*." *Hankins*, 441 F.3d at 114 (Sotomayor, J., dissenting) (alteration in original) (quotation marks omitted). That provision, however, does not indicate that RFRA defenses may be asserted only in suits brought by the government. Under the rule of last antecedent, *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012), the phrase "against a government" in section 2000bb-1(c) modifies "obtain appropriate relief," not "assert that violation as a claim or defense." It follows that while section 2000bb-1(c) allows an employer to obtain appropriate relief against a government, that section also allows an employer to assert RFRA against anyone, including a private plaintiff in an action to enforce an obligation imposed by a federal statute.

Accordingly, the phrase "obtain appropriate relief against a government" does not imply that a party may obtain relief *only* against a government. The phrase can as easily be read to waive sovereign immunity and so to allow a plaintiff to obtain appropriate relief against the government as well as anyone else. At a minimum, any negative implication that provision may create is not strong enough to override the express terms of the rest of the statute. *See Hankins*, 441 F.3d at 103 (concluding that permitting the assertion of RFRA as a defense to a claim brought by a private party to enforce a federal statute only when relief is also sought against a governmental party would involve "a convoluted drawing of a hardly inevitable negative implication").

Judge Sotomayor also relied on 42 U.S.C. § 2000bb-1(b), *see Hankins*, 441 F.3d at 114 (Sotomayor, J., dissenting), which provides that where a law imposes a substantial burden on religion, the "[g]overnment" must "demonstrate[] that application of the burden" is the least restrictive means of furthering a compelling governmental interest. RFRA defines "demonstrate" as "meet[ing] the burdens of going forward with the evidence and of persuasion." 42 U.S.C. § 2000bb-2(3). Where the government is not a party, Judge Sotomayor reasoned, "it cannot go[] forward with any evidence."

*Hankins*, 441 F.3d at 114 (Sotomayor, J., dissenting) (alteration in original) (quotation marks omitted).

RFRA, however, defines the "government" to include any "branch." 42 U.S.C. § 2000bb-2(1). The Judiciary is a "branch" of government, and where a plaintiff seeks relief against a religious employer under a federal statute, section 2000bb-2(1)'s requirement that the "government" satisfy strict scrutiny can be fairly read as requiring the *court* to conclude that enforcing the statute against that defendant would be the least restrictive means to further a compelling government interest.

RFRA's definition of "government" also includes any "person acting under color of law." 42 U.S.C. § 2000bb-2(1). In a suit by a private party seeking the enforcement of federal statutory rights against a religious employer, the plaintiff can be said to be "acting under color of law." In that kind of suit, the government is doing more than merely "acquiesc[ing]" in private party suit, *Flagg Bros. v. Brooks*, 436 U.S. 149, 164 (1978), as occurs where Congress enacts a statute of limitations.[3] Where Congress or a federal

---

[3] In *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999), the Ninth Circuit held that a plaintiff cannot bring a RFRA claim against a private defendant absent "some willful participation in a joint activity by the private entity and the government." *Id.* at 843. Here, by contrast, CRS

*Continued on next page.*

agency creates the legal obligation on which an employee sues a private employer, the plaintiff is best understood to be acting under color of law for RFRA purposes.

Dissenting in *Hankins*, Judge Sotomayor also noted that "[a]ll of the examples cited in the Senate and House Reports on RFRA involve actual or hypothetical lawsuits in which the government is a party." 441 F.3d at 115 n.9 (Sotomayor, J., dissenting). But the fact that a statute's legislative history fails to specifically mention a particular application of a statute does not mean that application falls outside the statute's coverage. *See Bostock v. Clayton County*, 590 U.S. 644, 669 (2020) (noting that there is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception").

In sum, the plain language, purpose, and history of RFRA support the conclusion that it applies not just in suits brought by the government itself but in private suits to enforce obligations created by federal statutes. Because the district court erred in concluding otherwise, this Court should remand for the

---

is raising RFRA as a *defense* to a private-party suit to enforce a federal statute, and Doe seeks relief not under RFRA, but under Title VII and the Equal Pay Act. In that context, Doe is acting "under color of law" for RFRA purposes for the reasons explained above.

court to determine in the first instance whether granting Doe relief on his Title VII and RFRA claims would substantially burden CRS's exercise of religion and if so whether granting relief would be the least restrictive means to further a compelling government interest.

## II. The First Amendment's Church Autonomy Doctrine Bars Doe's Title VII and Equal Pay Act Claims.

To the extent this Court remands for further proceedings on CRS's RFRA defense, it may properly decline to address CRS's constitutional defenses as RFRA may provide a complete defense to Doe's Title VII and Equal Pay Act claims.[4] *See, e.g.*, *United States v. Hamilton*, 699 F.3d 356, 367 (4th Cir. 2012). If the Court elects to address this issue, however, it should hold that the church autonomy doctrine independently bars Doe's Title VII and Equal Pay Act claims.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

---

[4] In contrast, CRS's arguments regarding 42 U.S.C. § 2000e-1(a) relate only to Doe's Title VII claims. As a result, this Court could properly refrain from addressing the scope of that provision, as it did in *Billard v. Charlotte Catholic High School*, 101 F.4th 316 (4th Cir. 2024), because this case may be resolved on other grounds. Because it is unnecessary for this Court to address the scope of section 2000e-1(a) in this appeal, the United States has not addressed that issue here.

thereof." U.S. Const. amend. I. "Among other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters "'of faith and doctrine'" without government intrusion." *Our Lady*, 591 U.S. at 746 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 186 (2012)). "State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion." *Id.*

While "[t]he independence of religious institutions in matters of 'faith and doctrine'" does not "mean that religious institutions enjoy a general immunity from secular laws," it does protect their "autonomy with respect to internal management decisions that are essential to the institution's central mission." *Our Lady*, 591 U.S. at 746. That autonomy includes the right to "select[] . . . the individuals who play certain key roles" in religious institutions. *Id.*

The First Amendment's "ministerial exception," is one "component" of that right. *Our Lady*, 591 U.S. at 746. That exception obliges courts to "stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Id.* Those positions

include members of the clergy, *id.* at 747; teachers who "educat[e] young people in their faith," *id.* at 753; and others whose "job duties reflect[] a role in conveying the Church's message and carrying out its mission," *id.* at 750 (quotation marks omitted). Where the ministerial exception applies, it bars suit regardless of the religious institution's motivations for engaging in the employment action challenged. *See Hosanna-Tabor*, 565 U.S. at 194.[5]

CRS does not contend that the First Amendment's ministerial exception applies here. As several Supreme Court justices have separately observed, however, the church autonomy doctrine applies more broadly. It allows religious organizations to demand that *non-ministerial* employees also share the organization's religious doctrine and live out those beliefs.

---

[5] The ministerial exception and the broader church autonomy doctrine are merits rather than jurisdictional defenses. *See Hosanna-Tabor*, 565 U.S. at 195 n.4 (noting that "the [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar"). In *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997), this Court affirmed the dismissal of the plaintiff's employment-related claims against his religious employer for lack of subject-matter jurisdiction, *see id.* at 330, 333, but *Bell* was decided prior to *Hosanna-Tabor* and there is no reason why the broader church autonomy doctrine would be jurisdictional where the ministerial exception is not.

In *Seattle's Union Gospel Mission v. Woods,* 142 S. Ct. 1094 (2022), Justices Alito and Thomas opined that the Constitution protects religious organizations, including churches, religious schools, and religious organizations engaged in charitable practices, "'from secular control or manipulation.'" *Id.* at 1096 (Alito and Thomas, JJ., respecting the denial of certiorari). As those Justices explained, such religious groups' "'very existence is dedicated to the collective expression and propagation of shared religious ideals,' and 'there can be no doubt that the messenger matters' in that religious expression." *Id.* (quoting *Hosanna-Tabor*, 565 U.S. at 200-201 (Alito, J., concurring)).

Justices Brennan and Marshall expressed similar views in *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987). As they explained, "[d]etermining that certain activities are in furtherance of an organization's religious mission, and that only those committed to that mission should conduct them, is thus a means by which a religious community defines itself." *Id.* at 342 (Brennan and Marshall, JJ., concurring in the judgment).

For those reasons, and because religious organizations "need to hire and pay staff," *Catholic Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 259 (2025) (Thomas, J., concurring), "[t]o force religious organizations to hire messengers and other personnel who do not share their religious views would undermine not only the autonomy of many religious organizations but also their continued viability," *Seattle's Union*, 142 S. Ct. at 1096 (Alito and Thomas, JJ., respecting the denial of certiorari). For similar reasons, requiring CRS to provide Doe's same-sex spouse with insurance coverage contrary to CRS's religious beliefs would violate both the Free Exercise Clause, which "protects a religious group's right to shape its own faith and mission through its appointments," *Hosanna-Tabor*, 565 U.S. at 188, and the Establishment Clause, which "prohibits government involvement in such ecclesiastical decisions," *id.* at 189.

The Supreme Court's decision in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), further demonstrates that the church autonomy doctrine bars Doe's Title VII and Equal Pay claims. *Catholic Bishop* held that allowing the National Labor Relations Board (NLRB) to exercise jurisdiction over teachers in public schools—including part-time lay teachers and physical education teachers, *see id.* at 493 n.5—would raise "serious constitutional

questions," *id.* at 501. Allowing the NLRB to exercise jurisdiction over religious schools would represent "an encroachment upon the former autonomous position of management," *id.* at 503 (quotation marks omitted), *Catholic Bishop* held, "open[ing] the door to conflicts between clergy-administrators and the Board, or conflicts with negotiators for unions," *id.* and "entangling church-state relationships of the kind the Religion Clauses sought to avoid," *id.* (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 616 (1971)).

The claims in this case present the same risks identified in *Catholic Bishop*. Allowing employees to bring Title VII and Equal Pay Act claims against a religious employer like CRS for taking employment actions based on the employer's sincere religious beliefs also would encroach on "ecclesiastical decisions," *Hosanna-Tabor*, 565 U.S. at 189, and pose the same "significant risk that the First Amendment will be infringed," *Catholic Bishop*, 440 U.S. at 502. *See also Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130 (3d Cir. 2006) (concluding that *Catholic Bishop* required holding that a sex discrimination claim by a Catholic-school teacher was not judicially cognizable).

The Supreme Court's jurisprudence regarding the First Amendment right of association provides additional support for the conclusion that the church autonomy doctrine bars Doe's Title VII and Equal Pay Act claims. In *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the Supreme Court held that applying a state law to require the Boy Scouts to grant adult membership to a scout who acknowledged that he was gay violated the Boy Scouts' First Amendment right of association. "Dale's presence in the Boy Scouts," the Court emphasized, would "at the very least[] force the organization to send a message, both to the youth members and the world, that the Boy Scouts accepts homosexual conduct as a legitimate form of behavior." *Id.* at 653.

The Court's analysis in *Dale* applies equally here. Forcing CRS to provide spousal benefits to the same-sex spouses of its employees would impinge on CRS's First Amendment right to church autonomy. *See Catholic Charities Bureau*, 605 U.S. at 255-258 (Thomas, J., concurring) (noting that the religion clauses' "special protection for the autonomy of religious institutions derives from at least three sources," including the "right of association"). "As with other voluntary associations, those 'who unite themselves to [a religious] body do so with an implied consent to' its internal

system of 'government, and are bound to submit to it.'" *Id.* at 257 (alteration in original) (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 729 (1872)).

The district court rejected CRS's church autonomy defense without any meaningful analysis of these precedents or principles. The court summarily asserted that this case would not require any "inquiry into matters of Catholic faith and doctrine" because it "concerns a social service organization's employment benefit decisions regarding a data analyst and does not involve CRS's spiritual or ministerial functions." JA929.[6] But that analysis frames the inquiry too narrowly, and ignores the practical consequences of compelling a religious organization to take employment actions contrary to its sincerely-held religious beliefs. As some of the amicus briefs in this case illustrate, one adverse consequence is that dissenting employees can fundamentally undermine the institution's religious character and mission. *See* Brief of General Conference of Seventh-Day Adventists 17. For example, "non-ministerial employees could make claims for discrimination when subjected to prayers, worship, and other overtly religious expressions in the workplace,"

---

[6] Those might be grounds for holding the ministerial exception inapplicable, *see Our Lady*, 591 U.S. at 753-754, but CRS is not relying on the ministerial exception here and the district court nowhere explained why the broader church autonomy argument CRS has made fails.

and "[e]ven discussions of an organization's beliefs could be viewed as creating a hostile work environment." *Id.*

This Court's reasoning in *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997), also supports the conclusion that the church autonomy doctrine bars Doe's claims. In *Bell*, an ordained minister sued his employer, a multidenominational religious outreach program, for breach of contract and various torts involved with terminating his employment as the program's executive director. *See id.* at 329-330. This Court held that the church autonomy doctrine barred the suit because "the dispute in this case is ecclesiastical." *Id.* at 331.

While the plaintiff in *Bell* was a minister, this Court did not rely on the First Amendment's ministerial exception in barring Bell's suit. Instead, this Court asked a broader question: whether the dispute between Bell and the national churches that were the program's principal constituents was "an ecclesiastical one about 'discipline, faith, internal organization, or ecclesiastical rule, custom or law,'" 126 F.3d at 331 (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976)), or a "purely secular dispute[] between third parties and a particular defendant, albeit a religiously affiliated organization," *id.* (quoting *General Council on Fin. & Admin. of the United*

*Methodist Church v. Superior Ct. of Cal.*, 439 U.S. 1355, 1373 (1978) (Rehnquist, Circuit Justice)). Bell characterized his suit as a "secular dispute between the churches and a third party," *id.* at 332, but this Court rejected that characterization, noting that in deciding whether to withhold funding from the program (causing the end of Bell's work with the program), the program's principal constituent church "made a decision on how it would expend funds raised by the church for religious purposes, which directly related to its outreach ministry." *Id.* at 332-333.

As in *Bell*, Doe's Title VII and Equal Pay Act claims involve an "ecclesiastical" rather than a "purely secular" dispute. *Bell*, 126 F.3d at 331 (quotation marks omitted). CRS "sincerely believes that it is 'never morally permissible to extend spousal benefits to an employee who has entered into a legally recognized same-sex union,' as doing so would amount to 'formal cooperation with the application of gravely unjust laws' and would 'further[] practices that the Church has declared to be injurious to the social order.'" CRS Opening Br. 6 (alteration in original) (quoting JA390-391). Holding CRS liable under Title VII or the Equal Pay Act for adhering to that belief violates the church autonomy doctrine. *See also Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648 (10th Cir. 2002) (citing *Bell* and holding that the

church autonomy doctrine barred a sexual harassment suit brought against a church by a former youth minister for informing church members that the minister was living in a same-sex relationship).

The history of the First Amendment further supports the conclusion that religious institutions have a First Amendment right to require all their employees to both hold and live out the institution's religious beliefs. The First Amendment "was adopted 'against [a] background' of distinct spheres for secular and religious authorities." *Catholic Charities Bureau*, 605 U.S. at 258 (Thomas, J., concurring) (quoting *Hosanna-Tabor*, 565 U.S. at 183). "In arguing for religious freedom for Baptists, for example, James Madison appealed to the notion of 'independent' 'spiritual and earthly authorities,'" and explained that "[r]eligion is wholly exempt from [Civil Society's] cognizance." *Id.* (second alteration in original) (quotation marks omitted) (quoting Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1497 (1990)).

Colonial American churches employed lay persons to maintain church buildings and grounds and carry out similar support functions. *See* Old N. Church, *Old North's Sexton: Then & Now,* https://perma.cc/F9NZ-KZUU. Given that generation's commitment to distinct spheres for secular and

religious spheres, it is unlikely it would have thought churches could be required to employ individuals in those roles contrary to those churches' religious beliefs. Thus, if this Court reaches this issue, it should hold that the church autonomy doctrine bars Doe's Title VII and Equal Pay Act claims.

## III. The District Court Failed to Adequately Address CRS's Free Exercise Clause Claims.

To the extent this Court remands for further proceedings on CRS's RFRA defense, it should likewise remand for the district court to perform a proper assessment of CRS's Free Exercise defense. In rejecting that defense, the district court failed to adequately assess whether the secular exceptions in Title VII and the Equal Pay Act pose a greater risk to the government interests underlying those statutes than the religious exemption CRS has requested. This Court should not undertake that fact-bound comparability analysis—which may not be necessary if CRS prevails on RFRA or any other grounds—in the first instance.

The First Amendment's Free Exercise Clause provides that Congress shall "make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. In *Smith*, 494 U.S. 872, the Supreme Court held that the Free Exercise Clause does not bar the application of "neutral, generally applicable law to religiously motivated action." *Id.* at 881. "[G]overnment regulations are

not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17-18 (2020) (per curiam)).

Thus, "[w]here the government permits other activities to proceed . . . , it must show that the religious exercise at issue is more dangerous than those activities." *Tandon*, 593 U.S. at 63. "[A] law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (second alteration in original) (quotation marks omitted).

In *Tandon*, the Court held that California's refusal to exempt at-home religious exercise from COVID meeting restrictions failed strict scrutiny because California permitted "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor

restaurants to bring together more than three households at a time." 593 U.S. at 63. Likewise, in *Roman Catholic Diocese of Brooklyn*, the Court held that a COVID-related executive order issued by the Governor of New York prohibiting a synagogue or church from admitting more than 10 persons failed strict scrutiny because acupuncture facilities, campgrounds, garages, plants manufacturing chemicals and microelectronics, and transportation facilities could admit as many people as they wished. *See* 592 U.S. at 17-18. And, in *Lukumi*, the Court held that local ordinances that banned animal sacrifice failed strict scrutiny because they allowed exceptions for almost all killings of animals except for religious sacrifice. *See* 508 U.S. at 536, 546. In each of these cases, the stated justifications for restrictions on religious activities were fatally undermined by exemptions permitted for non-religious activities, and those restrictions were therefore invalid under the Free Exercise Clause.

CRS contends that the Free Exercise Clause bars Doe's Title VII and the Equal Pay Act because each of those statutes has exemptions that undermine the government's interests in enforcing them against religious entities. The district court performed no comparability analysis with respect to the Equal Pay Act, and a truncated and inadequate analysis with respect to Title VII's exemptions. Accordingly, this Court should reverse and remand for

the district court to consider these issues under the proper legal framework (unless the Court dismisses those claims for other reasons).

## CONCLUSION

For the foregoing reasons, this Court should remand for further consideration of whether RFRA or the Free Exercise Clause provides a defense to Doe's Title VII and Equal Pay Act claims. In the alternative, the Court should hold that those claims are barred under the First Amendment's church autonomy doctrine.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

KELLY O. HAYES
*United States Attorney*

CHARLES W. SCARBOROUGH
*s/ Lowell V. Sturgill Jr.*

LOWELL V. STURGILL JR.
*Attorneys, Appellate Staff*
*Civil Division, Room 7531*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3427*
*Lowell.Sturgill@USDOJ.Gov*

CLICK HERE TO ENTER A DATE.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7009 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*s/ Lowell V. Sturgill Jr.*
Lowell V. Sturgill Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Lowell V. Sturgill Jr.*
Lowell V. Sturgill Jr.