# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

### JOHN DOE,

*Plaintiff-Appellee,*

v.

### CATHOLIC RELIEF SERVICES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland,
No. 1:20-cv-01815-JRR
(The Honorable Julie R. Rubin)

## REPLY BRIEF OF APPELLANT CATHOLIC RELIEF SERVICES–UNITED STATES CONFERENCE OF CATHOLIC BISHOPS

Joe Dugan
Brian Tucker
Collin Wojciechowski
GALLAGHER LLP
218 North Charles Street, Suite 400
Baltimore, Maryland 21201
jdugan@gallagherllp.com
btucker@gallagherllp.com
cwojciechowski@gallagherllp.com
(410) 727-7702

*Counsel for Defendant-Appellant Catholic Relief Services–United States Conference of Catholic Bishops*

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

Introduction .......................................................................................1

Argument............................................................................................3

    I.     Fair adjudication of all claims and defenses in this case would require religious answers to religious questions. ...................................3

    II.    The district court's reading of Title VII's religious employer exemption as extending only to preferential hiring of co-religionists contradicts the plain statutory language and sets up needless constitutional battles. ............................................7

    III.   The district court's implementation of federal law substantially burdened Catholic Relief Services' religious exercise in violation of RFRA. ...............................................................8

        A.    RFRA protects religious adherents from claims by private parties. .........................................................................8

        B.    Mr. Doe's opinions about Catholic moral teaching do not rebut the substantial burden on Catholic Relief Services' religious exercise.....................................................................11

        C.    Mr. Doe's arguments about the government's means and ends do not carry his burden to satisfy strict scrutiny......................15

    IV.   The district court misread the Supreme Court's recent precedents concerning neutral laws of general application. ...............19

    V.    The trial on the merits of Catholic Relief Services' implementation of its religious mission entangled church with state and led to an illogical result.......................................................23

    VI.   The Court should reject Mr. Doe's lopsided reading of Article 36 of the Maryland Declaration of Rights, which sometimes allows but never requires a burden on religious exercise. ..................25

Conclusion .....................................................................................266

Certificate of Compliance .....................................................................27

Statutory Addendum ......................................................................... Add.i

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Belya v. Kapral*,
45 F.4th 621 (2d Cir. 2022) ................................................................4

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020)...............................................................*passim*

*Braidwood Mgmt., Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) ....................................................18, 19

*Carter v. Fleming*,
879 F.3d 132 (4th Cir. 2018) ...........................................................11

*Catholic Charities Bureau, Inc. v. Wis. Lab. & Indus. Review Comm'n*,
605 U.S. 238 (2025).........................................................................3

*City & County of San Francisco v. Env't Prot. Agency*,
604 U.S. 334 (2025).........................................................................9

*Conway v. Mercy Hosp. St. Louis*,
146 F.4th 704 (8th Cir. 2025) ............................................................5

*DeJarnette v. Corning Inc.*,
133 F.3d 293 (4th Cir. 1998) .............................................................8

*Doe v. San Diego Unified Sch. Dist.*,
19 F.4th 1173 (9th Cir. 2021) .........................................................21

*Dole v. Shenandoah Baptist Church*,
899 F.2d 1389 (4th Cir. 1990) ...................................................14, 17

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021)..........................................................21, 22

*EEOC v. Fremont Christian Sch.*,
781 F.2d 1362 (9th Cir. 1986) ........................................................13

*EEOC v. Great Steaks, Inc.*,
667 F.3d 510 (4th Cir. 2012) ............................................................10

*EEOC v. Mississippi Coll.*,
626 F.2d 477 (5th Cir. 1980) .............................................................17

*EEOC v. R.G. & G.R. Harris Funeral Homes*,
884 F.3d 560 (6th Cir. 2018) ......................................................12, 16

*Elvig v. Calvin Presbyterian Church*,
375 F.3d 951 (9th Cir. 2004) ..............................................................4

*Emp. Div. v. Smith*,
494 U.S. 872 (1990)............................................................................1

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*
*Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) .............................................................22

*Fitzgerald v. Roncalli High Sch., Inc.*,
73 F.4th 529 (7th Cir. 2023) ...............................................................8

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021)...................................................................*passim*

*Gaddy v. Corp. of the President of the Church of Jesus Christ of*
*Latter-Day Saints*,
148 F.4th 1202 (10th Cir. 2025) ...................................................3, 23

*Garrick v. Moody Bible Inst.*,
95 F.4th 1104 (7th Cir. 2024) ..............................................................4

*Herx v. Diocese of Fort Wayne-South Bend, Inc.*,
772 F.3d 1085 (7th Cir. 2014) .............................................................4

*Kane v. De Blasio*,
19 F.4th 152 (2d Cir. 2021) ...............................................................11

*Kim v. Bd. of Educ. of Howard Cnty.*,
93 F.4th 733 (4th Cir. 2024) .............................................................22

*Liberty Univ., Inc. v. Lew*,
733 F.3d 72 (4th Cir. 2013) ...............................................................11

iii

*Mahmoud v. Taylor*,
606 U.S. 522 (2025)................................................................2

*McMahon v. World Vision Inc.*,
147 F.4th 959 (9th Cir. 2025) ...........................................18

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
157 F.4th 627 (5th Cir. 2025) ..............................................4

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
966 F.3d 346 (5th Cir. 2020) ...............................................4

*Montrose Christian Sch. Corp. v. Walsh*,
363 Md. 565 (2001) ...........................................................18

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964).............................................................10

*O'Connell v. U.S. Conf. of Catholic Bishops*,
134 F.4th 1243 (D.C. Cir. 2025)..........................................4

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
591 U.S. 732 (2020)...............................................10, 23, 24

*Puri v. Khalsa*,
844 F.3d 1152 (9th Cir. 2017) .............................................4

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
772 F.2d 1164 (4th Cir. 1985) ...........................................17

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995)............................................................14

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
547 U.S. 47 (2006)..............................................................14

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at
Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ..............................................25

*Sherbert v. Verner*,
374 U.S. 398 (1963).............................................................11

iv

971033

*Spivack v. City of Philadelphia*,
    109 F.4th 158 (3d Cir. 2024) ...............................................................21

*Stone v. Instrumentation Lab'y Co.*,
    591 F.3d 239 (4th Cir. 2009) .............................................................24

*Tandon v. Newsom*,
    593 U.S. 61 (2021) ...............................................................2, 3, 20

*Union Gospel Mission of Yakima Wash. v. Brown*,
    162 F.4th 1190(9th Cir. 2026) ...........................................................6, 23

*United States v. Benton*,
    523 F.3d 424 (4th Cir. 2008) .......................................................17, 20

*United States v. Lee*,
    455 U.S. 252 (1982) .............................................................................18

*Wrightson v. Pizza Hut of Am., Inc.*,
    99 F.3d 138 (4th Cir. 1996 ..............................................................17

**Statutes[1]**

42 U.S.C. § 2000bb ...........................................................................11

42 U.S.C. § 2000bb-1 .................................................................9, 10

42 U.S.C. § 2000bb-2 ........................................................................9

42 U.S.C. § 2000bb-3 ...................................................................8, 9

42 U.S.C. § 2000e ...............................................................................2

42 U.S.C. § 2000e-1 ...........................................................................7

---

[1] Copies of statutes referenced herein are attached to Defendant-Appellant's Opening Brief Addendum with the exception of 42 U.S.C. § 2000bb-2. A copy of 42 U.S.C. § 2000bb-2 is included in the Addendum attached hereto.

**Other Authorities**

*Establishment Industry: U.S. and States, NAICS, Detailed Employment*, U.S. Census Bureau (Dec. 21, 2023), https://www.census.gov/data/tables/2021/econ/susb/2021-susb-annual.html (last visited Jan. 10, 2026) ............................................................23

H.R. Rep. No. 103-88 (1993), https://www.justice.gov/sites/default/files/jmd/legacy/2014/03/26/houserept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.pdf .....................................................................................16

Victoria Cardiel, *Worldwide Catholic Population Hits 1.4 Billion*, https://www.catholicnewsagency.com/news/262883/worldwide-catholic-population-hits-14-billion .....................................................................28

971033

## INTRODUCTION

In *Bostock v. Clayton County*, 590 U.S. 644 (2020), the employers expressed concern that "complying with Title VII's requirement" in cases involving alleged sexual orientation or gender identity discrimination "may require some employers to violate their religious convictions." *Id.* at 681. Although "no . . . religious liberty claim" was before the Court, *id.* at 682, the Court emphasized its commitment to "preserving the promise of the free exercise of religion." *Id.* at 681. And the Court reassured the employers, and the religious public, by recounting existing protections in federal law. The subtext was clear: the change in employment law announced in *Bostock* would not impair the rights of religious employers who, like Catholic Relief Services, sincerely believe marriage to be a covenant between one man and one woman and whose creeds prohibit them from endorsing or facilitating same-sex unions.

The lower courts in this case did not heed *Bostock*'s call. Time and again, these courts ruled in a manner contrary to Supreme Court precedent and with the effect of curtailing the religious exercise rights of a nonprofit corporation governed by the Catholic Church. The district court cabined RFRA to actions involving government parties, an incongruous reading of a statute enacted to reinstate a doctrine that, until *Employment Division v. Smith*, 494 U.S. 872 (1990), had protected religious litigants regardless of the status of their adversaries. The court

read Title VII's religious employer exemption as protecting only employers' rights to favor co-religionists, despite that "religion" is defined in Title VII as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). The court misapplied *Tandon v. Newsom*'s admonition that "government regulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise," 593 U.S. 61, 62 (2021), concluding that employment statutes that exempt vast swaths of secular activity are saved from strict scrutiny because they happen to exempt ***some*** religious activity.

The Maryland Supreme Court compounded the district court's legal errors by fashioning a new test, unrelated to either the text or the legislative history of the Maryland Fair Employment Practices Act ("MFEPA"), which limits the MFEPA religious employer exemption to a vaguely defined universe of employees who "directly further" a "core mission," a test the court inexplicably concluded could be administered without "analysis of religious doctrine." (JA994.) The district court then applied the new test, entangling itself in Catholic Relief Services' internal operations and concluding that the agency does not know what it takes to further its own religious mission.

This cannot be what the *Bostock* Court had in mind. The same Supreme Court that just last Term created a free exercise carve-out for parents objecting to sex-ed programming, *Mahmoud v. Taylor*, 606 U.S. 522 (2025), and held 9-0 that

Wisconsin could not withhold a religious employer exemption from a charity the Wisconsin courts deemed insufficiently religious, *Catholic Charities Bureau, Inc. v. Wis. Lab. & Indus. Review Comm'n*, 605 U.S. 238 (2025), would not abide a trial about a Catholic charity's execution of its religious mission and a judgment punishing that charity for abstaining from grave sin. Faithful application of the Supreme Court's recent precedents, including *Tandon* and *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), and a plain-language reading of RFRA and the Title VII religious employer exemption, require a different outcome here. This Court should reverse.

## ARGUMENT

I.  **Fair adjudication of all claims and defenses in this case would require religious answers to religious questions.**

Mr. Doe opens with the strawman assertion that Catholic Relief Services views the church autonomy doctrine as "bar[ring] the Court from deciding *every* case involving a religious institution or defense." Br. of Pl.-Appellee John Doe ("Appellee's Br.") 14. Catholic Relief Services has never argued that. Rather, to "determine whether the doctrine is implicated as to a given claim," courts must "determine whether the dispute is, at bottom, an ecclesiastical one about discipline, faith, internal organization, or ecclesiastical rule, custom or law, or a purely secular one . . . ." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1211 (10th Cir. 2025) (citation modified). Any

number of disputes involving religious organizations may have nothing to do with creed. But where the "alleged misconduct is rooted in religious belief, then the conduct has 'the protection of the Religion Clauses.'" *Id.* at 1212 (citation omitted); *see McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627, 641 (5th Cir. 2025) ("Where the church autonomy doctrine applies, its protection is total. That is because the doctrine is a constitutional immunity from suit."), *pet. for cert. docketed* (U.S. Jan. 6, 2026). Catholic Relief Services' RFRA and free exercise defenses would require the Court to answer religious questions about the Catholic principle of cooperation and the doctrine of scandal, and the *Doe III* framework required the district court to rummage through Catholic Relief Services' internal organization. These circumstances implicate church autonomy.[2]

---

[2] These circumstances also make this case unlike *Puri v. Khalsa*, 844 F.3d 1152, 1167 (9th Cir. 2017), where the question was whether certain board members had been elected. Other church autonomy cases on which Mr. Doe relies are irrelevant or unhelpful to his position. *O'Connell v. U.S. Conference of Catholic Bishops*, 134 F.4th 1243, 1254 (D.C. Cir. 2025), *pet. for cert. docketed* (U.S. Jan. 15, 2026); *Garrick v. Moody Bible Institute*, 95 F.4th 1104, 1117 (7th Cir. 2024); *Belya v. Kapral*, 45 F.4th 621, 634 (2d Cir. 2022); and *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091 (7th Cir. 2014) dismissed interlocutory appeals for lack of appellate jurisdiction. *McRaney v. North American Mission Board of the Southern Baptist Convention, Inc.*, 966 F.3d 346, 351 (5th Cir. 2020), found the district court's resolution of the defense premature, but years later held that "the church autonomy doctrine prohibits any court from adjudicating McRaney's claims," 157 F.4th at 631. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 969 (9th Cir. 2004), recognized that a discharged minister

To the extent Mr. Doe suggests that Catholic Relief Services' church autonomy argument is not viable because Catholic Relief Services saw fit to employ him, Appellee's Br. 18, the argument invites "textbook denominational discrimination," *Catholic Charities*, 605 U.S. at 248, as civil courts have no basis to second-guess an employer's sincere religious belief that allows for association but disallows an act the employer finds to be "tantamount to endorsement," *Fulton*, 593 U.S. at 532; *see Conway v. Mercy Hosp. St. Louis*, 146 F.4th 704, 709 (8th Cir. 2025) ("To deny an exemption based on inherently religious decisions . . . would risk unconstitutional denominational discrimination.").  To the extent Mr. Doe contends that this case "does not involve . . . an entity with a religious mission" or the "internal organization of such an entity," Appellee's Br. 20, the record disproves that bizarre claim.  (JA1107-1119; JA1846; JA1847; JA1942-1958; JA2615-2625; JA3025-3027.)

Further, to the extent Mr. Doe suggests, Appellee's Br. 18, and the Maryland Attorney General argues, Br. of Intervenor State of Maryland ("OAG Br.") 22, that the church autonomy doctrine is cabined in the employment context to the ministerial exception, the Ninth Circuit recently explained why that argument is wrong.  "Because who a religious organization hires may go to the very character

---

"may not rely on protected ministerial decisions . . . as bases for the Defendants' liability."

of its religious mission, the church autonomy doctrine protects the decision to hire co-religionists for non-ministerial roles if that decision is based on the organization's sincerely held religious beliefs." *Union Gospel Mission of Yakima Wash. v. Brown*, 162 F.4th 1190, 1197 (9th Cir. 2026). In *Union Gospel*, the state defendants disputed neither that the plaintiff was a religious institution, nor that the plaintiff had a sincere belief that only co-religionists could advance its mission, nor that the plaintiff's hiring policy was based on that religious belief. *Id*. at 1209. The court held that "Union Gospel is likely to succeed on the merits of its claim that enforcing [state employment law] against it . . . violates the church autonomy doctrine." *Id.* The same logic applies here, where Plaintiff concedes the sincerity of Catholic Relief Services' beliefs about marriage, Appellee's Br. 10, and where the record shows that Catholic Relief Services terminated Plaintiff's spousal health benefits because of those beliefs (JA379-398). Because Catholic Relief Services "sincerely believes" that provision of spousal health benefits to the same-sex spouses of employees would violate its "religious mission, the only way a court could adjudicate a dispute for a plaintiff would be to rule that the religious institution cannot seek that 'mission' or that the [benefits] policy isn't necessary to that 'mission'—inherently religious questions." *Union Gospel*, 162 F.4th at 1204.

**II.    The district court's reading of Title VII's religious employer exemption as extending only to preferential hiring of co-religionists contradicts the plain statutory language and sets up needless constitutional battles.**

Title VII's "express statutory exception for religious organizations," *Bostock*, 590 U.S. at 682 (citing 42 U.S.C. § 2000e-1(a)), allows religious employers to make personnel decisions that accord with those employers' sincerely held religious beliefs without running afoul of Title VII.  The district court's and Mr. Doe's interpretation of this exception as protecting only the right of religious employers to employ co-religionists rests upon flawed assumptions about how different faith traditions express their religion.  While it is true that some religious employers (the General Conference of Seventh-day Adventists, for example) believe that they should hire only co-religionists, it is equally true that other religious employers (Catholic Relief Services, for example) practice ecumenism— so long as they are not compelled to engage in practices that violate their creed.  In both scenarios, the religious employer is making its decision ***because of its religion***, not on the basis of another protected classification under Title VII.  Any construction of the exemption to favor religious employers in the first category but not the second is denominational discrimination, which the First Amendment prohibits.  *Catholic Charities*, 605 U.S. at 248.

Rather than excluding from the exemption those religiously motivated acts that might be construed, absent religion, as other forms of discrimination, the Court

should determine whether an employer's stated rationale is sincere or pretextual. *See Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529, 536 (7th Cir. 2023) (Brennan, J., concurring). While Mr. Doe suggests that this analysis itself could implicate church autonomy, Appellee's Br. 26, the pretext inquiry focuses on the narrow question of whether an employer's proffered rationale was true or false, not "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the adverse action. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citation omitted)). Just as courts in other Title VII contexts need not evaluate whether an employer's appraisal of an employee's performance was correct or fair, a court evaluating whether a religious employer is using Title VII's religious employer exemption as a pretext for a prohibited form of discrimination need not evaluate whether that employer's religious belief is theologically sound so long as it was the true reason for its actions. The pretext inquiry does not require civil courts to probe religious practices or answer religious questions, which is the heart of what church autonomy prohibits.

## III.  The district court's implementation of federal law substantially burdened Catholic Relief Services' religious exercise in violation of RFRA.

### A.  RFRA protects religious adherents from claims by private parties.

RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise." 42 U.S.C. § 2000bb-3(a). And it prohibits

"government" from substantially burdening religious exercise absent extraordinary circumstances. *Id.* § 2000bb-1(b). "Government" includes any "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." *Id.* § 2000bb-2(1). Thus, as the United States explains, Br. for Intervenor The United States of America ("Intervenor Br.") 12, just as the EEOC may substantially burden an employer's religious exercise by suing an employer for adhering to its religious beliefs, so too may the federal judiciary substantially burden religion in applying such a statute to a religious employer at the request of a private plaintiff standing in the shoes of the EEOC. The judiciary is a "branch" of "government." So too is Congress, which may substantially burden religious exercise by enacting a legislative scheme that infringes an employer's religious liberties.

Mr. Doe does not explain how exclusion of the vast majority of employment cases, which are litigated by private parties without EEOC involvement, squares with RFRA's extension to "all Federal law, and the implementation of that law." 42 U.S.C. § 2000bb-3(a). Instead, he plays word games, suggesting that courts don't "implement" law. Appellee's Br. 35-36. But "implementation" is not defined in RFRA, and even the inapposite case law on which Mr. Doe relies shows that the relief he sought in federal court was the "implementation" of federal law. *See City & County of San Francisco v. Env't Prot. Agency*, 604 U.S. 334, 347

(2025) ("The implementation of an objective generally refers to the taking of actions that are designed 'to give practical effect to and ensure of actual fulfillment by concrete measures.'" (citation omitted)).[3]

Mr. Doe argues that the congressional record does not reflect an intent that RFRA would apply in private-party litigation.  Actually, Congress was quite clear about the breadth of the statute.  As the report issued by the House Committee on the Judiciary in advance of the statute's passage explains, "the definition of governmental activity covered by the bill [was] meant to be **all inclusive**," with the test applying "**whenever** a law or an action taken by the government to implement a law burdens a person's exercise of religion."  H.R. Rep. No. 103-88, at 6 (1993), https://www.justice.gov/sites/default/files/jmd/legacy/2014/03/26/houserept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.pdf (emphasis added).  Moreover, it is uncontroversial that First Amendment defenses more generally may apply in private-party litigation, *e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 742, 745 (2020), and Mr. Doe does not argue

---

[3]  Mr. Doe insists that it is not appropriate to require private plaintiffs to stand in the government's shoes with respect to enforcement of a statute, Appellee's Br. 36-37, but he does not explain why that is so given that Title VII litigants are private attorneys general, *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012).  Mr. Doe also questions how a religious adherent could "obtain appropriate relief" in private-party litigation "against a government," Appellee's Br. 37, but as the United States explains, Intervenor Br. 16, that language identifies one remedy without cabining the broader guarantee that an adherent "may assert [a] violation as a claim or defense in a judicial proceeding," 42 U.S.C. § 2000bb-1(c).

otherwise. His reading of RFRA does not "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963)," 42 U.S.C. § 2000bb(b)(1).

**B.** **Mr. Doe's opinions about Catholic moral teaching do not rebut the substantial burden on Catholic Relief Services' religious exercise.**

Mr. Doe's challenge to Catholic Relief Services' substantial burden argument is predicated on his belief that Catholic Relief Services' theological positions are not internally consistent, and on his confusion (inexplicable, after years of litigation) about the sin that Catholic Relief Services seeks to avoid.  It is "not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*."  *Kane v. De Blasio*, 19 F.4th 152, 168 (2d Cir. 2021) (citations omitted).  When deciding the question of a substantial burden, "courts must not judge the significance of the particular belief or practice in question."  *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citation omitted).  Mr. Doe's approach to the substantial burden issue is ironic, given his insistence that resolution of this dispute does not require a court to probe matters of faith or doctrine.  His substantial burden argument implicates both.[4]

---

[4]  Mr. Doe relies on an older D.C. Circuit case in asserting that a substantial burden is one that forces a religious adherent to engage in forbidden conduct or that prevents the adherent from engaging in required conduct.  Appellee's Br. 40.  The formulation in this Circuit is more flexible.  *See Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 100 (4th Cir. 2013) ("A substantial burden . . . requires 'substantial

Early in this litigation, Mr. Doe designated a purported "expert" theologian who, it turned out, had been censured by the U.S. Conference of Catholic Bishops for his heterodox teachings. Mr. Doe sensibly chose not to rely on that "expert" at summary judgment or trial and does not do so on appeal. But the consequence is that while Catholic Relief Services has offered substantial evidence, through unrebutted fact and expert testimony, about the impact on its religious exercise were it required to provide spousal health benefits for employees in same-sex relationships, Mr. Doe has offered no evidence to the contrary—just speculation rooted in his misunderstanding of Catholic teaching.

Thus, while Mr. Doe declares that "[c]ompliance with Title VII and EPA does not equate to forced endorsement of Doe's marriage," Appellee's Br. 40, Catholic Relief Services and its expert, bioethicist Dr. John Haas, have explained that provision of the benefits Mr. Doe requests would constitute formal cooperation with wrongdoing in the eyes of the Catholic Church and also could result in the sin of scandal. (JA831, JA848.) The cases on which Mr. Doe relies do not suggest otherwise. In *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock*, 590 U.S. 644, the employer complained that he was put to an improper choice of paying for female attire for a

---

pressure on an adherent to modify his behavior and to violate his beliefs.'" (citation omitted)).

971033

transgender employee or allowing her to dress in female attire. *Id.* at 587.[5] The court found that the company's practice of purchasing attire for female employees was not necessary to attract workers, and that "simply permitting [employee] to wear attire that reflects a conception of gender that is at odds with [employer's] religious beliefs is not a substantial burden under RFRA." *Id.* at 588. Mr. Doe did not merely ask Catholic Relief Services for permission to present himself in a particular way to the world, and he rejected Catholic Relief Services' proposed alternatives to spousal health benefits. He demanded instead that Catholic Relief Services provide him with a benefit the provision of which would constitute a grave sin.

That sin is not merely, as Mr. Doe suggests, "condoning . . . sexual relations outside of a heterosexual marriage." Appellee's Br. 42. The sin is engaging or cooperating in any activities that "provide any recognition of the liceity of what civil law now calls a 'marriage' between two persons of the same sex." (JA842.) Mr. Doe cites no record evidence—and there is none—showing that Catholic Relief Services has ever abandoned its opposition to spousal health benefits for the same-sex spouses of employees. Catholic Relief Services' consistent position distinguishes this case from *EEOC v. Fremont Christian School*, 781 F.2d 1362,

[5] Because the employer did not preserve its RFRA defense for Supreme Court review, *Bostock*, 590 U.S. at 682, the Supreme Court did not "decline[] to walk through" the door that *Bostock* left open, Appellee's Br. 41.

971033

1368 (9th Cir. 1986), where the defendant school (i) previously abandoned a practice of paying scriptural "heads of household" at a higher rate due to concerns about liability and (ii) provided various benefits (but not health benefits) to men and women employees alike. It likewise distinguishes this case from *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1397-98 (4th Cir. 1990), where "church members testified that the Bible does not mandate a pay differential based on sex" and where "the school now complies with the FLSA."

Mr. Doe also relies on *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 65 (2006), where the Supreme Court dismissed the law schools' fear that the presence of military recruiters on campus could be seen as an endorsement of the recruiters' speech; and *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 841-42 (1995), where the Supreme Court was not persuaded that religious content in a student newspaper could be imputed to the university. Years later, though, when the *Fulton* Court was tasked with evaluating the free exercise impact of a certification rule that religious adherents found "tantamount to endorsement," the Court had no difficulty siding with the adherents. 593 U.S. at 532. Mr. Doe insists that "CRS need not provide a stamp of approval on Doe's legal union to comply with the law," Appellee's Br. 42, but that is ***exactly the argument*** that the Supreme Court rejected in *Fulton*. *See* 593 U.S. at 532 (rejecting the city's assertion that "certification reflects only that foster

14

parents satisfy the statutory criteria, not that the agency endorses their relationships," because "CSS believes that certification is tantamount to endorsement"). Mr. Doe's real argument is that he disagrees with *Fulton*, but that is no reason for the Court to reject Catholic Relief Services' defense.

Finally, Mr. Doe misapprehends—again—Catholic Relief Services' argument about scandal, a Catholic religious doctrine, asserting that courts "will not allow the preferences and prejudices of third-parties to determine whether the sex discrimination is valid." Appellee's Br. 44 (citation modified). That is not Catholic Relief Services' argument. Catholic Relief Services is relying on its ***own*** religious obligation to refrain from cooperating with what it sincerely believes to be sinful behavior or engaging in conduct that could lead another into sin. (JA831, JA842-843, JA848.) Plaintiff does not get to decide whether Catholic Relief Services has drawn the religious lines correctly, tolerating some conduct while finding other conduct morally impermissible. Religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Fulton*, 593 U.S. at 532 (citation omitted).

### C. Mr. Doe's arguments about the government's means and ends do not carry his burden to satisfy strict scrutiny.

Relying almost exclusively on cases that predate *Fulton*'s clarification of the strict scrutiny framework in religious exercise cases, Mr. Doe argues that government has a compelling interest in eradicating sex discrimination. No doubt,

that interest is important, but "the First Amendment demands a more precise analysis. Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id*. at 541 (citation modified). To the extent Mr. Doe's older cases find strict scrutiny satisfied simply because the government has an interest in ending workplace discrimination, those cases have been abrogated by *Fulton*.

    *R.G.* illustrates this problem. The Sixth Circuit found that failure to "enforce Title VII against the Funeral Home means the EEOC would be allowing a particular person . . . to suffer discrimination." 884 F.3d at 591. Mr. Doe makes the same argument here. Appellee's Br. 48. So, too, did the city defendant in *Fulton*, and while the Supreme Court did "not doubt" that the "interest of the City in the equal treatment of prospective foster parents and foster children" was "weighty," it found that "this interest cannot justify denying CSS an exception for its religious exercise." 593 U.S. at 542. The same reasoning applies in the employment law context, where the "creation of a system of exceptions," including exceptions that extend to ***over eighty percent*** of Maryland employers,[6] "undermines [any] contention that [the government's] non-discrimination policies

---

[6] *2021 SUSB Annual Data Tables by Establishment Industry: U.S. and States, NAICS, Detailed Employment*, U.S. Census Bureau (Dec. 21, 2023), https://www.census.gov/data/tables/2021/econ/susb/2021-susb-annual.html (last visited Jan. 10, 2026).

971033

can brook no departures." 593 U.S. at 542. Mr. Doe offers "no compelling reason" why the government has a "particular interest in denying an exception to C[R]S while making them available to others." *Id.* His strict scrutiny argument is irreconcilable with *Fulton*.[7]

Analogizing to tax cases, Mr. Doe also argues that an exemption for Catholic Relief Services, a "multinational organization," would be "difficult to accommodate." Appellee's Br. 50 (citation omitted). Mr. Doe did not make this argument at the district court and so waived it, *United States v. Benton*, 523 F.3d 424, 428 (4th Cir. 2008), but in any event the argument makes no sense. Until 2020, some courts (including this one) did not even recognize Title VII as prohibiting sexual orientation discrimination. *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996), *abrogated in part by Bostock*, 590 US. 644. No

---

[7] Other older, free exercise cases cited by Mr. Doe are distinguishable on their facts. In *Dole*, there was "no principled way of exempting the school without exempting all other sectarian schools and thereby the thousands of lay teachers and staff members on their payrolls." 899 F.2d at 1398. Nothing in the record here indicates that the relief Catholic Relief Services seeks would have any similar impact on legislative goals in eradicating workplace discrimination. In *EEOC v. Mississippi College*, 626 F.2d 477, 488-89 (5th Cir. 1980), the court found support for the government's compelling interest in eradicating discrimination in not only "congressional enactments but also . . . the thirteenth amendment," a constitutional principle not relevant here. By comparison, in *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985), this Court acknowledged that "courts must distinguish incidental burdens on free exercise in the service of a compelling state interest from burdens where the 'inroad on religious liberty' is too substantial to be permissible" (citation omitted).

971033

reasonable person could have predicted the atextual limitations the Maryland

Supreme Court placed on the MFEPA religious employer exemption in *Doe III*.

*See Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 580 (2001) ("The state

statute was modeled after the federal anti-discrimination law, providing the same

broad exemption for religious organizations." (citation omitted)).  Even now,

everyone agrees that religious employers are constitutionally immune from claims

by ministers, an increasingly capacious category, *see McMahon v. World Vision

Inc.*, 147 F.4th 959, 966 (9th Cir. 2025) (customer service representatives were

ministers), and protected from MFEPA claims by employees who "directly

further" a "core mission" (JA986).  And, religious exemptions aside, part of the

reason Title VII, the federal Equal Pay Act, and MFEPA cannot be deemed

generally applicable is their litany of secular exemptions.  The legislatures that

enacted these statutes evidently were unconcerned with the administrability of an

employment law regime riddled with carveouts.  And that makes this context

dissimilar from a "tax system" that "could not function if denominations were

allowed to challenge the . . . system because tax payments were spent in a manner

that violates their religious belief."  *United States v. Lee*, 455 U.S. 252, 260 (1982).

Finally, while Mr. Doe asserts that "no court has accepted any viable

'alternatives' to Title VII," Appellee's Br. 51, the Fifth Circuit did just that in

*Braidwood Management, Inc. v. EEOC*, 70 F.4th 914, 940 (5th Cir. 2023) ("even if

18

we accepted the EEOC's formulation of its compelling interest, refusing to exempt Braidwood . . . is not the least restrictive means of promoting that interest"); *see id.* n.59 (identifying a less restrictive means). While Catholic Relief Services never has disputed that Mr. Doe may have experienced some degree of emotional distress—though no court has "disentangle[ed] Doe's past trauma from the distress caused by events of this case" (JA945)—presumably most employees who claim to have experienced workplace discrimination could articulate some degree of emotional distress. Indeed, intervenor-respondents in *Fulton* made essentially the same argument that Mr. Doe makes here. *See* Br. in Opp'n for Intervenor-Respondents at 28, *Fulton*, No. 19-123 (S. Ct. Oct. 10, 2019) ("the availability of another foster care agency does not erase the injury of discrimination or eliminate its deterrent effect"). The Supreme Court found that argument insufficient. *Fulton*, 593 U.S. at 542.[8]

## IV. The district court misread the Supreme Court's recent precedents concerning neutral laws of general application.

The district court held, and Mr. Doe argues, that Title VII, the federal Equal Pay Act, and MFEPA are neutral and generally applicable notwithstanding

---

[8] Mr. Doe suggests that the less restrictive means Catholic Relief Services offered him—an increase in his pay and access to a COBRA-like insurance alternative—was unrelated to the termination of his benefits. Appellee's Br. 52. He's wrong about that, as some of the source material he cites reflects. But the district court never decided this issue (JA945), and Mr. Doe himself acknowledged under oath that he was told the technical increase was a "workaround." (JA3761.)

*Tandon*'s holding that "government regulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise." 593 U.S. at 63. Mr. Doe suggests that the carveouts from these statutes, including Title VII and MFEPA exclusions that would apply to over eighty percent of Maryland employers, are consistent with *Tandon* because some small businesses happen to be religious. *Tandon* rejected the corollary of that argument, holding that it is "no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Id.* at 62. Likewise, it is no answer that the government treats *some* religious exercise favorably while treating the religious exercise at issue unfavorably (particularly because such line drawing easily could lapse into denominational discrimination, disfavoring religions whose missions require larger workforces).

Mr. Doe also asserts that statutory exemptions favoring other employers, but not Catholic Relief Services, "were created to ensure feasible implementation of the laws." Appellee's Br. 58. This is another new argument that Mr. Doe waived, *Benton*, 523 F.3d at 428, but the argument also is irrelevant, because "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62. That is, the focus of the comparability analysis is not on

20

the reason for the **exemption**; it is on the reason for the **regulation**.[9]  Everyone

agrees that Title VII, the federal Equal Pay Act, and MFEPA exist to curtail

workplace discrimination.  That regulatory interest is every bit as relevant for small

businesses as it is for large ones.  Indeed, the interest is greater for small businesses

that may engage in outright invidious discrimination, versus Catholic Relief

Services' sincere desire to implement the value system of a religion with 1.4

billion adherents worldwide.[10]  Congress and the Maryland General Assembly may

not excuse from regulation certain employers for administrative convenience (or

any other secular reason) while refusing to excuse employers that can show the

regulation substantially burdens their religious exercise.

The district court also held, and Mr. Doe argues, that MFEPA's religious

employer exemption as modified by the Maryland Supreme Court passes

constitutional muster notwithstanding *Fulton*'s holding that a "law is not generally

applicable if it invites the government to consider the particular reasons for a

---

[9]  For that reason, the vaccine mandate cases on which Mr. Doe relies—*Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021); *Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021); and *Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir. 2024)—do not support his position.  A medical exemption for persons whose health would be endangered by vaccination furthers the goal of public health.  An exemption allowing small businesses to discriminate does not further the goal of eradicating workplace discrimination.

[10]  Victoria Cardiel, *Worldwide Catholic Population Hits 1.4 Billion*, CNA (Mar. 21, 2025, 2:00 p.m.), https://www.catholicnewsagency.com/news/262883 /worldwide-catholic-population-hits-14-billion.

971033

person's conduct by providing a mechanism for individualized exemptions." 593 U.S. at 533 (citation modified). Mr. Doe's focus on the "entirely discretionary exceptions" at issue in *Fulton*, Appellee's Br. 63, is "overly narrow. Properly interpreted, *Fulton* counsels that the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable . . . ." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 687-88 (9th Cir. 2023). *Doe III*'s "fact-intensive inquiry," 484 Md. at 673, is so simultaneously broad and vague that a court could find just about any employee to be within or outside the scope of the exemption by defining the organization's mission and methods more or less narrowly. That framework presents the same risk to religious freedom that would arise from a system of individualized exemptions implemented by an administrative agency rather than a court, and is fundamentally unlike the "single objective exemption" at issue in *Mills*, 16 F.4th at 30, or the Maryland statute that "bars non-public-school students, religious and nonreligious alike, from choosing or serving as the student member" at issue in *Kim v. Board of Education of Howard County*, 93 F.4th 733, 748 (4th Cir. 2024).

Finally, while Mr. Doe tries to compare the MFEPA religious employer exemption to the ministerial exception, Appellee's Br. 63, the ministerial exception is itself a constitutional doctrine. MFEPA is a statute, and like all statutes is

subject to constitutional override—in this case, by the Free Exercise Clause of the First Amendment.

## V. The trial on the merits of Catholic Relief Services' implementation of its religious mission entangled church with state and led to an illogical result.

As discussed in Part I, Mr. Doe's claims in this case are not justiciable because fair adjudication of Catholic Relief Services' defenses would require religious answers to religious questions. But church autonomy protects against more than a civil court answering theological questions that are beyond its ken. Church autonomy insulates from judicial review those decisions "rooted in religious belief." *Gaddy*, 148 F.4th at 1211 (citation omitted). And it "forbids government intrusion into the 'internal management decisions that are essential to [an] institution's central mission.'" *Union Gospel*, 162 F.4th at 1203 (quoting *Our Lady of Guadalupe Sch.*, 591 U.S. at 746).

The *Doe III* test as implemented by the district court is the picture of unconstitutional entanglement. Mr. Doe's brief in this Court exemplifies that point. As Mr. Doe recounts, the district court made detailed findings about Catholic Relief Services' religious mission and the means it employs to carry out that mission. Appellee's Br. 66-67. The court scrutinized Mr. Doe's role vis-à-vis the roles of other employees and decided that Catholic Relief Services is wrong about what it takes to further its own mission. *Id.* at 68. The district court's

application of the MFEPA religious employer exemption further restricted an exemption already narrowed by *Doe III*, contorting the statute beyond recognition. But if the Court disagrees and finds that the district court correctly applied *Doe III*, any such finding would run headlong into the prohibition against "judicial entanglement in religious issues," *Our Lady of Guadalupe Sch.*, 591 U.S. at 761.[11]

Furthermore, although Mr. Doe zealously defends the district court's trial on religion, he has no real answer for Catholic Relief Services' observation that the *Doe III* test as applied by the district court would prohibit an entry-level fieldworker who "directly serve[s] the poor and vulnerable overseas" (JA1124) from bringing a sexual orientation discrimination claim, while allowing a highly paid manager to bring such a claim. Surely the Maryland General Assembly did not contemplate ***that*** absurd result. *Cf. Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 243 (4th Cir. 2009) ("Courts will not . . . adopt a 'literal' construction of

---

[11]   The Maryland Attorney General likens the *Doe III* test as applied by the district court to the Supreme Court's guidance in *Our Lady of Guadalupe School* concerning which employees qualify as ministers. OAG Br. 28. The Court in that case warned that "in considering the circumstances of any given case, courts must take care to avoid 'resolving underlying controversies over religious doctrine.'" 591 U.S. at 751 n.10. The Court also observed that a "religious institution's explanation of the role of . . . employees in the life of the religion in question is important." *Id.* at 756. More fundamentally, though, the ministerial exception considers "*what* an employee does," *id.* at 753 (emphasis added), not ***whether*** what the employee does "directly furthers" the employer's mission. The inherent subjectivity of the *Doe III* framework as applied by the district court, and the manner by which *Doe III* empowers civil courts to probe internal church procedures, is what makes the framework unconstitutional.

971033

a statute if such interpretation would thwart the statute's obvious purpose or lead to an 'absurd result.'" (citation omitted)).  Assuming that the Maryland Supreme Court sought to vindicate legislative intent, the absurdity of exempting claims by hypothetical fieldworkers but not Mr. Doe illustrates that, whatever *Doe III* means or requires, the district court applied the test incorrectly.

## VI.    The Court should reject Mr. Doe's lopsided reading of Article 36 of the Maryland Declaration of Rights, which sometimes allows but never requires a burden on religious exercise.

As a fallback, Mr. Doe argues that application of the MFEPA religious employer exemption to bar his claims would violate Maryland's corollary to the Free Exercise Clause of the First Amendment, Article 36 of the Declaration of Rights.  Article 36 states in relevant part:

> [N]o person ought by any law to be molested in his person or estate, on account of [religion] . . . unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights . . . .

Mr. Doe's Article 36 argument is waived, as he did not allege in his Complaint (JA11-32) that application of the MFEPA religious entity exemption would be unconstitutional as applied to him, but "parties cannot amend their complaints through briefing or oral advocacy," *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).  Waiver aside, Mr. Doe cites no authority for his gravity-defying leap of logic from the

plain text of Article 36, which ***allows*** the State to abridge free exercise in limited circumstances, to his assertion that the State ***must*** abridge the free exercise rights of employers like Catholic Relief Services in circumstances where MFEPA's religious employer exemption otherwise would apply.  Article 36 does not require the Maryland legislature to exercise its police power in any particular way.

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

_____*/s/ Joe Dugan*_____
Joe Dugan
Brian Tucker
Collin Wojciechowski
GALLAGHER LLP
218 North Charles Street, Suite 400
Baltimore, Maryland 21201
Phone:  (410) 727-7702
jdugan@gallagherllp.com
btucker@gallagherllp.com
cwojciechowski@gallagherllp.com

Dated:  February 2, 2026

*Counsel for Defendant-Appellant Catholic Relief Services–United States Conference of Catholic Bishops*

971033

## CERTIFICATE OF COMPLIANCE—FED. R. APP. P. 32(G)(1)

1.     This brief contains 6,443 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

2.     This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman. This brief therefore complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

*/s/ Joe Dugan*
Attorney for Appellant
Dated: February 2, 2026

971033

## STATUTORY ADDENDUM

The following Addendum contains the citation and verbatim text of all pertinent constitutional provisions, statutes, ordinances, rules, and regulations, not provided in Defendant-Appellant's Opening Brief Addendum.

# ADDENDUM INDEX

42 U.S.C. § 2000bb-2 ............................................................................. iii

971033

# 42 U.S.C. § 2000bb-2

## § 2000bb-2. Definitions

As used in this chapter--

**(1)** the term "government" includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity;

**(2)** the term "covered entity" means the District of Columbia, the Commonwealth of Puerto Rico, and each territory and possession of the United States;

**(3)** the term "demonstrates" means meets the burdens of going forward with the evidence and of persuasion; and

**(4)** the term "exercise of religion" means religious exercise, as defined in section 2000cc-5 of this title.

971033